UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., <br> Plaintiff, <br> v. <br> INTERSIL CORPORATION, <br> Defendant. | Case No. 5:18-mc-80060-HRL <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH SUBPOENAS** <br><br> Re: Dkt. Nos. 1, 3 |

The present discovery dispute arises out of litigation filed by plaintiff Monolithic Power Systems, Inc. (MPS) in the District of Delaware against Intersil Corporation (Intersil), an MPS competitor in the semiconductor industry. This court is told that the lawsuit concerns Intersil's alleged theft of MPS's claimed confidential technical information concerning a fix for a problem in motherboards manufactured by MPS's customer, Supermicro Computer, Inc. (Supermicro). MPS claims that Intersil misused that information to defame MPS's products to MPS's customers. Among other things, Intersil disputes that MPS took reasonable steps to maintain the confidentiality of the claimed trade secrets that Intersil supposedly misappropriated.

Relevant to the present discovery dispute is what, if any, non-disclosure agreements (NDAs) MPS had in place with Supermicro prior to the filing of the lawsuit. The parties disagree whether Intersil should be permitted to depose one of MPS's in-house attorneys, Ms. Lindsey

Munro.[1] Munro was involved in the negotiation of what MPS calls a "renewal NDA" entered between MPS and Supermicro shortly after this litigation was filed on December 6, 2016. She also prepared two slide presentations on NDAs that MPS says were used by the company to train employees on confidentiality issues.

Prior to the signing of the December 2016 NDA, MPS says that it had an "unwritten confidentiality understanding" with Supermicro, as well as protections afforded by the terms and conditions of MPS's web portal, "MyMPS." Intersil scoffs at the characterization of the December 2016 NDA as a "renewal," and questions what, if any, NDA arrangements actually were in place prior to the entry of that agreement. Intersil also has its doubts about the MyMPS web portal terms and conditions, which Intersil says, concern materials made available in connection with the use of that particular website. Defendant also claims that Supermicro employees who logged on to MyMPS to download data sheets had no authority to bind Supermicro to a contract.

Intersil now wants to depose Munro about the content of her negotiations with Supermicro concerning the December 2016 NDA. This discovery is crucial, says defendant, because Intersil believes that the December 2016 NDA "renewed" nothing and that any suggestion about "updated" NDAs merely was a notion MPS concocted after-the-fact to support its allegations. For its part, MPS maintains that the December 2016 NDA is irrelevant because it was not operative during case events. At any rate, MPS contends that Intersil has not shown that Munro's deposition is warranted. Additionally, MPS says that Intersil had the documents purportedly providing the basis for Munro's deposition for over a year. Thus, MPS argues that defendant's efforts to depose Munro (and to have her produce documents in connection with the deposition) come far too late in the case. Here, MPS points out that under the case schedule, document discovery was to have

---

[1] MPS also moved to quash a subpoena for the deposition of Trip Slautterback, an MPS sales employee. However, having agreed to make Slautterback available for deposition, and having further agreed to have the dispute over that deposition resolved in Delaware, MPS said that it included Slautterback in the present motion simply as a precaution. This court is informed that Slautterback has since been deposed. MPS's motion to quash as to him therefore is denied as moot.

2

been substantially completed by November 17, 2017, and fact discovery closed on March 30, 2018.

The matter is deemed suitable for determination without oral argument, and the May 1, 2018 hearing is vacated.[2] Civ. L.R. 7-1(b). Upon consideration of the moving and responding papers, this court grants MPS's motion to quash as to Munro.

Although there is no absolute prohibition against deposing an opposing party's counsel, such examinations "should be permitted only where the party seeking the deposition shows that (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." *Chao v. Aurora Loan Servs., LLC*, No. C10-3118 SBA (LB), 2012 WL 5988617, at *3 (N.D. Cal., Nov. 26, 2012) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *Graff v. Hunt & Henriques*, No. C08-0908 JF (PVT), 2008 WL 2854517 at *1 (N.D. Cal., July 23, 2008) (same).

Intersil has not persuaded that the information it seeks meets the *Shelton* criteria. Defendant wants to examine Munro about the "content of her negotiations with Supermicro to determine what, if any, NDA arrangements were in place prior to the so-called 'update.'" (Dkt. 6-3 at ECF p. 7). Intersil says that Munro's deposition is important because neither Rohan Samsi (MPS's Fed. R. Civ. P. 30(b)(6) designee) nor Kevin Bauer (Supermicro's Fed. R. Civ. P. 30(b)(6) designee) were able to testify about Munro's communications with Supermicro. Although communications between Munro and Supermicro are not privileged, MPS says that those communications occurred by email, all of which have been produced. (Dkt. 2-4). Intersil does not, on this motion, challenge the completeness of that email production. True, one of the emails indicates that Munro had a phone call with Supermicro. However, that email appears to simply reflect agreement about certain proposed edits that had already been discussed by others: "Hi Deanna, thank you for talking with me earlier. As we discussed, I made a few changes to the Supermicro NDA consistent with the discussions between Joseph and Saria." (Dkt. 2-4 at ECF p.

---

[2] MPS does not consent to the transfer of this motion to Delaware for resolution, and Intersil has not asked for a transfer order.

3

3). And, in response to an interrogatory asking about MPS's communications with Supermicro, MPS confirmed that "the only non-written correspondence about this negotiation consisted of MPS proposing the edits reflected in MPS_INT0005144-46, and Supermicro agreeing to these edits without further discussion; this correspondence and agreement was reflected in e-mail correspondence afterward." (Dkt. 8-10 at ECF p. 12).[3]

Intersil nonetheless argues that it should be permitted to depose Munro about the NDA slide presentations that she prepared, stating that the presentations are "the only policies and procedures governing the protection, use, and/or treatment of trade secrets that [MPS] has been able to identify . . .." (Dkt. 6-3 at ECF p. 10). Intersil maintains that a deposition about the presentations is crucial because the slides contain mostly "bullet points" rather than "detailed expositions of [MPS's] policies." (Dkt. 6-3 at ECF p. 10). However, MPS points out that it has, in response to interrogatories, denied that the presentations are company "policies." (Dkt. 8-8 at ECF pp. 22-26). Moreover, MPS argues that although defendant certainly had the opportunity to do so, Intersil never sought discovery about documents MPS produced and which MPS says are the company's "actual confidentiality policies"---including an employee handbook, an IT department handbook, and a "Design and Development Data Security Procedure"---none of which were authored by Munro. (*See* Dkts. 8-5, 8-6, 8-7). Intersil nevertheless contends that the slides contain statements that reportedly contradict Mr. Samsi's Fed. R. Civ. P. 30(b)(6) deposition testimony as to whether any individual employee is authorized to bind the corporation to an NDA agreement. However, Intersil has not convincingly demonstrated that a probing deposition of Munro is warranted to expound upon claimed discrepancies that are apparent on the face of the documents themselves.

In sum, Intersil has not convincingly demonstrated that Munro has any unique or personal knowledge relevant to the issues that cannot be obtained from other sources. MPS's motion to

---

[3] Although one or both sides have asked to seal MPS's emails and interrogatory responses, the contents discussed in this order were disclosed by MPS in its public filings.

4

quash therefore is granted.

SO ORDERED.

Dated: April 27, 2018

HOWARD R. LLOYD
United States Magistrate Judge